The trial judge in this case should have granted Lawrence County's Rule 50 motion for judgment as a matter of law. This is a takings inverse condemnation case. Inverse condemnation was the only claim before the jury at trial. In a takings case, as you know, the plaintiffs would have had to establish that there was some sort of a substantial diminishment in the value of their land. In Arkansas Game and Fish v. United States, the court established that the plaintiff in Arkansas Game and Fish v. United States established that there must be some evidence of damages in a takings case. They likened it to a contracts case. Damages must be reasonably certain and approximate. In this case, the court properly instructed the jury that the damages in this takings case should be based on a diminishment in the property values or the fair market value of their land. What the plaintiffs did establish in this case is that the bridge at issue that was additional flooding. We will concede that there is some evidence of that. What they haven't established is that additional flooding matters in any way. Counsel, you do agree that the standard is there has to be a complete absence of probity facts to support the verdict, right? That is the standard? Your Honor, there has to be no evidence that a reasonable juror could find that would allow them to reach a verdict on that issue. They have not done that. The reason they haven't done that is the plaintiffs in the case had a damages expert. The damages expert in this case testified that farm land, the property values and the fair market value, the fair market rental value which is the exact instruction, is based upon crop yields. The standard, which their expert testified to, is that 25% of crop yields is the fair market rental value. In this case, what you would have expected the damages expert to do was to figure out what crops the farmers actually made and compare them to some sort of expected yield to figure out how much they lost. That's not what he did. He came up with an expected yield and then assumed that they never made one crop. You didn't have one individual plaintiff farmer get on a stand and say, I lost this particular crop in this particular year. I thought a couple of farmers talked about specific years, counsel. They talked about flooding in specific years. They said it flooded in one particular year. I thought that one of them said they didn't get nothing some year. That's true. They also said that some years prior to the bridge being built, they didn't get any crops. Just because some, before the bridge was built, they also, Cleo Watkins testified that there was years they didn't make a crop before this bridge was built as well. What they had to do was, what the expert had to do was to testify that there was even more years or more amounts that they should have lost than what they would have originally been expected for it to constitute a table. Why isn't a lot of this just sort of common sense? I'll tell you. We have a garden and we have apple trees and different types of fruit trees. When it rains a lot, particularly when they, some of these folks said it was way steep, I think, at certain points. I can tell you it doesn't mix. We get no apple crops. We get fungal infections. If people are describing it as being way steep, why isn't it just common sense that you're not going to be able to plant crops that don't go up to your waist? Your Honor, I think it's common sense that there's years that they're not going to make a crop regardless of this bridge existing. Floods are going to happen. Their expert testified that, at most, that there was two to three additional inches of water on their property for two to three more days, period. That was the most. In some of these properties' farms, it was even less water than that. So they have to prove that this additional water led to some sort of damage. Was there testimony, though, from some that it was waist-deep or at least knee-deep? I think it said waist-deep for some of them. Well, so there may have been. I don't know that they testified that it was waist-deep all the time, but they also testified that in just an ordinary course of farming, you're going to have extreme floods. And that they also testified that there has been more rainfall, too, in addition. So more rainfall means more flooding, and that's what they testified to as well. But the rain is causing it to be waist-deep, not the bridge itself. And so what I'm saying is the additional water on their property was, by the testimony in the case, two to three more inches for two to three more days. There may have been waist-deep at some times, but it was going to always be waist-deep because of the amount of rainfall on that day. So you have to look at the experts. Did the jury, though, you know, I found it curious. The jury seemed to only, the way I looked at the damages, seemed to only give them essentially one year worth of damages, each of the plaintiffs. And so isn't it quite possible that the jury understood exactly what you're saying and instead of giving them, like, an every-other-year award, they gave them one year out of that period. That's what the damages came out to be. Well, I think that would make sense. But the expert that testified about the damages didn't even use the additional flooding amounts and the additional flooding map that the other expert, the hydrologist expert, created to come up with his damage amounts. His damage amounts came from nowhere. The farm, one expert used a map of partials, and another expert for damages used a map of, not even a map, but farm numbers. They don't have anything to do with each other, and he even admitted it on the stand they don't have anything to do with each other. Was there no effort to connect these FSA form 578s with the number that Johnson identified on the map? No effort whatsoever. Jim Grisham, the plaintiff's damages expert, testified at trial. He was not familiar with the map that the other expert created. There's no way to connect the damages they came up with to the maps themselves and the additional flooding. There may be some... Is it no way too strong, though, where we're talking about Arkansas land that probably over a big area looks a lot alike? I understand it. It looks a lot alike. A lot. This is... Let me say that. A lot alike, right? Fair. Go ahead. So, it's complicated because the hydrologist expert came up with a really complex map that cut across farms at times because some farms might have had additional flooding at parts of it, but the other parts of it had normal amounts of flooding. And so it wasn't that simple. And so there has to be some way to connect the, what I will call the liability evidence, to the damages evidence. And there's just not. There's no testimony from the experts that correlate to each other whatsoever. You have one expert that's coming up here saying this is how it's... Well, again, I think that's the third or fourth absolute term you've used. That time you said whatsoever. And I do think that, and especially this jury. I think this jury knows a lot of this land is exactly alike. Sure. The land may be alike. However, it's different in proximity to this bridge. And so if they're alleging the bridge is causing extra flooding, the proximities matter. And that's why the map matters versus the farm numbers that the other expert used. And so there has to be some way to connect them one to the other. There was a plaintiff who had four tracts of land, and as I understand it, three of those tracts, the testimony was that three of those tracts had no damage at all. Is that correct? Yes, Your Honor. And I believe... Yeah. I'm sorry. I have a question. I'm sorry. I apologize. So my question is, I looked at the verdict form, and it appeared that all four of those tracts appeared in the verdict form for a damage amount to be calculated, and there was a damage amount, and one of those tracts was probably entitled or as much entitled to an award as any of the others in the case, but there were three tracts that I thought were supposed to be taken out of consideration, but they seem to be in the verdict form. Is that correct? Your Honor, I believe we brought that issue before the court in our Rule 50 motion briefing, and I believe the court ruled against us because it was not objected to at trial at the time of the creation of the verdict forms. We believe that when you create the verdict forms, you don't know what evidence is going to be offered at that time. So a Rule 50 objection would be proper to dismiss the verdicts, at least for those tracts that had damage awards with not even generations. There's no way to tell which. Yeah. Okay. Correct, Your Honor. I'm going to- That's in the record. It's exchanged with respect to the objection below? I believe so. I believe that's in the court's order. Okay. I'm not sure what to do with that, but I'll look at it. Yes, Your Honor. Thank you. I'd like to shift to talking about the cross-appeal just briefly, getting a little low on time. The plaintiffs in this case were denied injunctive relief by the court who asked them to tear this bridge down and questioned the court decline to do so based on a balance of the equities. Well, let me jump in there, and one of the things that I thought was interesting is the district court seemed to actually apply the wrong test, apply the test for standing, not the multi-factor test for injunctive relief, and that, to me, is a legal error right off the bat. Do you disagree with that? What I believe is that, and not what I believe, but what I believe the case law states is that in a takings case, you can't get injunctive relief. The reason for that is the government has an absolute right to take your property. There's been a lot of cases to say that, Key Lowe, Hawaii Housing Authority, they have a right to do that, and if they get a damage award saying that the government took their property, they can't also have the bridge taken down. That undoes the taking. But that's not what the district court said, so I'm going to go back to my original question. The district court came, I mean, that may be a separate issue, but the district court said here's this three-part test for standing. I'm going to apply this three-part test to stand. Okay, no injunctive relief because it fails it. Right, Your Honor, and as I read the district court's order, it looks to me like she basically said this court has a right to apply injunctive relief based on a balance of the equities and went through a balance of the equities analysis. So I don't know if that properly answers your question or not. So you would say, I think what you're saying is she may have cited the wrong standard off the bat, but she eventually got to the right place by balancing the equities. That's correct, Your Honor. Okay. And so, and what I'll say is she did that correctly by talking about things such as this bridge stood for 20 years before anyone filed a lawsuit, that there were lots of people that used this bridge, school buses used this bridge, things of that nature. But additionally, as we argued in our brief and we argue, this court can uphold for any And I think the strongest argument is that they do not, just simply do not have a legal right to take this bridge down because of taking jurisprudence that establishes the government has a right to take your property as long as they pay just compensation. And in this case, the jury awarded, obviously we have other arguments that it was not proper, but the jury awarded some amount of just compensation. And so once the government pays that, they have a right to keep the bridge in place. I'm not sure you're right about the no injunctive relief in part because that aims at something different. It aims at the future, whereas the damages aim at the past. But beyond that, I wonder, there's this argument that whether the district court actually assumed something in its analysis that the jury had already rejected, which is that there is too much uncertainty to establish damages, which is kind of irrelevant, I think, for injunctive relief for the most part, but at the very least is inconsistent with the jury verdict that did award damages. And so I wonder if that by itself is enough to at least send it back, along with citing the three-part test for standing, so the district court can at least apply the right test and not contradict the jury finding. Well, I'll try to be brief in my response to you and reserve the rest of my time. But I believe that based on the case law and based on the testimony that the plaintiffs offered evidence that these floodwaters would continue into the future. We don't know what the jury did. We don't know if they ordered based on future value. And so that could constitute a double recovery, which is also the purpose of the fact that the government has a right to take your property, and in this case, if the jury and the judge have ruled that, then it has a right to stay up. So I'll reserve the rest of my time. Thank you, guys. You may. Ms. Greathouse. Counsel, you may use the button, too. It's one of my favorite features here at the Eighth Circuit. Ms. Greathouse, proceed. Thank you, Julie Greathouse, for the Farmers. I'm here as the appellee and the cross-appellant in this case. May it please the court. This case is about takings and just compensation. The appeal is to decide two things. Did the jury have enough evidence to find a taking and support its damages? And did the district court err when it denied the plaintiff's injunction? The answer to both questions is yes. Cases like Loretto, Kaiser Aetna, Cosby, and Kress tell us that the takings jurisprudence that the government action that amounts to a physical invasion is the most direct means of taking property for public use. The right to use and enjoy one's property and pursue it for its reasonable investment back to expectation is a right that is protected. These invasions are takings in this case, but the county tries to treat this case like a tort. You can see it in its analysis on takings and on just compensation. An issue in takings cases, and especially temporary physical invasions, is often whether those physical invasions arise to the level of a taking and not merely a tort. When they do, the owner is being compensated for that invasion of the property interest. Cases like Cedar Point Nursery, Arkansas Game and Fish, with which I'm very familiar, and others, that is a compensable injury to the bundle of rights that a property owner enjoys and must be compensated. Here the county parked its floodwaters on the farmer's property over and over for a period of years and still is. There was more than sufficient evidence that the temporary, foreseeable, severe interference with the farmer's right to use and enjoy their property rose to the level of a taking. Now the liability issue, I think that the jury probably had enough there, but damages actually, and I'm sure you were going to get there, but I just want to cut to the chase, which is the damages are a different issue because these farmers didn't keep records of what their yields were from year to year. Maybe that's enough for a reasonable approximation, the lay testimony, but it seems pretty thin when crop yields are the way the rents are calculated. Well, your honor, I'll submit to you that the county and I believe the district court both confuse these issues at times because crop damages are, and the recent Idacare case has said even more clearly than before that crop damages are compensable separate injury, but so are the trespasses that rose to a level of a taking here. The ability to be free of the floodwaters, the ability to exclude, is also a compensable injury, and we know from the case law, your honor, such as looking back to some of the wartime era cases when we're talking about temporary invasions that are physical in nature, such as General Motors. Well, I don't disagree. I don't know that you're answering my question. I don't disagree that there's probably enough for a taking. What I'm talking about is the damages. My understanding of the way it works is 75% go to the farmer or thereabouts, 25% go to the landowner's rent, and we have no records whatsoever from any, or at least most of them, if not all of the homeowners, or excuse me, the farmers, about how much crops they had, how much they made. It's sort of from year to year. It's sort of a mystery. Well, your honor, I'd submit that that's not entirely correct. The FSA forms list the landowner, the farmer, the acres planted, broken down by the specific crop, the yield per acre, the total yield, the price per share, or price per acre the crop sold for. Those items are on the FSA forms, your honor. By year? Year to year? And they were used. I believe so, your honor, not having them in front of me, I don't know that I can accurately answer that question. But those forms were used along with the damages experts, knowledge and experience in managing similar properties, not to determine what the lost crops were, not to determine what the bushel of beans would be worth and whether we lost that bushel, but to determine what the fair market value of that type of property would be. And that, your honor, is what I was getting at with the cases like General Motors back in the wartime era and cases like, the other one is leaving me right now that's a favorite, but they use that measure of damage. It is commonly used in temporary invasion cases. What's, when you say that measure of damages, what is that measure of damages? Rental value, your honor. Okay. That brings me back to my earlier point, which is rental value is, of course, determined by crop yields, potentially. Well, it can be, your honor, and I think it's important and instructive here to look at the instruction that the jury was given. Because rental, because the comparable value of the property was one of the things that the jury could consider, but instruction 20 that's in your record provides for the jury to take a holistic approach and consider a wide range of factors, including the expense of necessary repairs, the loss of fair market value. In determining fair market value, they were allowed to consider opinions of witnesses, location of the property, surrounding and general environment, particular suitability for a particular purpose, rental of comparable properties, as our expert presented, and reasonable probability as to future potential uses. There are a variety, and a variety of evidence was presented to the jury, your honor, in addition to their extensive testimony. There was extensive testimony as to the interference in the record. Mark Johnson depicted these damages and had actually a live animation that I wish that you all had been able to see, but the jury did, to show exactly where the water was going. There was a breakdown of those flood days. There were depictions of the flood model. They had the FSA forms. Counselor, are those in the district court record? Yes, your honor, all but the animation, because it requires- Was that an exhibit? How was it handled? No, but in Mark Johnson's report, your honor, there is a figure that has that still topo map. With a little bit of luck over here, I'll be able to refer you to the appendix page. That map in the animation actually shows the water moving. You can see it and hear it in the testimony of Mark Johnson, even though you don't have the fancy technology that would allow us to play it here. That map was used. It was on a huge blow up, a demonstrative, that the jury actually took back to the room with them so that they could see where the parcels were. Counsel have that now? Counsel have that exhibit? Counsel have whatever the jury took back to the room? Yes, your honor. Okay, thank you. Yes, your honor. I'll get that reference for you shortly. It's just not accurate to say that there was not evidence in the record to support the damages amount, or your honor, that the method, which by the way, has not been challenged on appeal. The measure of damage has not been challenged here by the county. Only whether there's sufficient evidence to support that verdict. You know, I just want to ask, it's sort of a cynical question, but I want to ask, the cynical part of me says, well, maybe the district court saw, or excuse me, the jury saw that there was a taking, but given that there were 20 years, they didn't know what the damages really were, so they just sort of settled on one year because they thought the landowners should get something. So that to me suggests that they were at least unsure about damages, at least from the plaintiff's side. Well, your honor, I would encourage you to look, and I'm sure you have, at the verdict form. It was a very complicated and difficult verdict form that required the jury to check over and over again, whether it believed there was a taking on all of these properties that are listed on the map that I referenced earlier, Judge Minton, that I'll get you a reference to. The jury doesn't seem to be confused at all. It decided over and over that the county had taken this property and it estimated and approximated damages based on the more than ample evidence, which is all that the law requires. We don't have to know. I'd love to know exactly what a jury does back at its jury ring, but I don't get to know that. And neither does this court, and so long as there is evidence in the record that could support damages, it must be affirmed by this court. And I submit to you that that evidence is there, your honor. The question on damages is not whether the jury got it right or whether the jury got it wrong. It's whether there are facts to support it. There are here. This court should affirm the underlying taking and award just compensation as the jury has already determined is appropriate. Counsel, is there anything to the argument that the FSA form numbers were not connected sufficiently to Mr. Johnson's tract numbers for the jury to connect them up? Your honor, the tract numbers used in Mr. Johnson's analysis were used to depict where the flooding was happening. And then we had the testimony of every property owner who confirmed where their properties were. The jury had a deed to show them where the properties were. The flooding had been shown to them on a map in testimony, and as I said on this animation, the jury knew where the properties were flooding. And that, by the end of that trial, could not reasonably have been questioned. I hope that answers your question, your honor. Well let me ask you, because I still think, I understand that there's no dispute that the numbers on the FSA forms, which are by owner, right? They don't connect to the tracts. They don't connect to the land. Well, and your honor, I think they do by way of testimony. But regardless, we're not using the FSA forms to determine the specific crop that was lost and to ask for those damages. Under the Idaker case, it seems more clear than ever that that element of damage could be obtained in this case as a separate measure of just compensation. We asked for damages for the interference, the temporary interference, and those cases that I cited to earlier, your honor, are ones like this where fair market rental value was used to determine the measure of damage. I want to go back to Judge Arnold's point on the three of, so there were those parcels, there were three of four parcels that had no increase in flooding in terms of the parcel numbers or whatever. You had mentioned in your brief, as I recall, that you thought those three parcels were taken out of the verdict form. But I read that really lengthy verdict form myself. I cannot see anywhere where those three parcels, now maybe there's still enough to say that those damages are warranted, but I'm just wondering where you came up with the jury verdict form that was excluded. Your honor, as I stand here now, I would say that we likely thought at the time the verdict forms were argued that those had been removed. But that is an agreed upon verdict form that was not challenged on appeal and it was waived below. I do think there's plenty of support in the record, your honor, for the damages verdict. There is a parcel of property owned, one tract, by that landowner and there was evidence, her son testified for her in that case and there's sufficient evidence to support the actual damages verdict that was rendered on that landowner. I'd like to address the injunction argument since I'm the appellant on that one. The jury award, as you all have noted already, was to compensate the plaintiffs for the past. But because the government's instrument of the harm, I'll call it, the bridge, the crude culvert structure that is in place will remain there. The plaintiffs need injunctive relief here to end the perpetual takings and the perpetual lawsuits that are to come. The district court denied that injunction and it did so by using the wrong analysis and so it reached the wrong result. How do we know that? We see it in the court's analysis on delay, doubts, and disorientation on damages. Delay is not an appropriate factor to consider in a permanent injunction analysis and it's also not a correct factual assertion here. Well, it can be. I don't know that I agree with your absolute statement. Let's say you delay. It's kind of like latches and that's an equitable ... If you delay 25 years and let's say they've built up a huge development right on the other side of that bridge and removal of the bridge will flood the development, I think that's certainly the delay becomes a relevant consideration as well as the reliance interest for the injunctive relief. In asking for an injunction. Fair enough, Your Honor, and absolutes are almost never good in taking cases as we found out from the Arkansas Game and Fish opinion. Here there was no delay. The record is full of letters and complaints that were sent to the county over a period of years hoping that the county would remove the structure or modify it so that flooding did not continue. That evidence is all in the record. It did not happen. They were forced to sue. This suit was filed in 2017. We are now seven years from the filing of that suit without any just compensation in order, Your Honor, to pursue another one of these claims. My clients are looking at another seven years to a verdict and I submit to you, Your Honor, that that's not just in any way and it is not what the law contemplates. I believe in this instance, Your Honor, when the parties filed for the taking, it was not required to seek a preliminary injunction. It would have been a very difficult exercise in a takings case where you're talking about flooding by water to meet that burden ahead of the verdict. Once the verdict was in, the timing was perfect. Not delayed, but perfect for the entry of a permanent injunction. Well, counsel, the latest Supreme Court, very clear at least in my reading, statement is the eBay case. Are you familiar with it from 2006? I'm not, Your Honor. Well, regardless, the third big prong is considering the balance of hardships between the plaintiff and defendant whether a remedy in equity is warranted. I'm quoting. Isn't that what the district judge did here? Well, I agree. I believe the district court used the wrong standard. I think that's reversible and at a minimum, the district court should have to apply the right standard. Balancing of the equities, which is what she would have gotten to next if she determined there was standing. So assuming that she did, the balance of the equities here weighs in favor of the farmers. They've owned this land for generations and they cannot use it as it was intended, as is its investment-backed expectation in any predictable manner. Flooding of these properties, Your Honor, at any time of year, our expert testified, Mr. Grisham, interferes with the operation of a farm. So the flooding at any time, it was an invasion of the property. Here, Your Honor, the testimony was there was substantial interference with our ability to use and enjoy the property and the county put on one witness who says that he needs to drive a tractor across it. I don't think the evidence supports that the school bus still goes down that road because no one lives there to pick up. Wasn't there some dispute about that factor, about who lives there and how often it's used? I think there's very little evidence, Your Honor. I don't know that I'd call it a dispute that anyone uses this except for the gentleman who drove the tractor. And he said, under testimony and cross-examination of our side, he didn't care what bridge was there. He doesn't need a culvert structure that floods our client's property. What he needs is a way to get his tractor across. Speaking of the equities, Your Honor, there's a more equitable way to do this. I see, Your Honor, that I'm out of time. We request that the court enter the injunction or remand to have the court apply the proper test. Thank you, Your Honor. Thank you, Ms. Greathouse. Mr. Heap. Your Honor, it's me, the police, the court. Ms. Greathouse spent a lot of time discussing a temporary taking, and then she asked you to reverse the court's finding of a permanent relief, and she argued that the court used the wrong standard. As you well know, this court can uphold for any reason, even if the court reached the Back on the issue of damages, there was basically three types of testimony. You had the farmers that testified that it flooded more and I lost some crops. Then you had a hydrology expert that testified that it flooded more. Then you had a damages expert that said, I don't know if they lost any crops or not. That's what he said on the stand. He doesn't know. They very well could have made more money. There may have not been a reduction in the fair market rental value of their land. The case law in Arkansas Game and Fish compares the damages standard to contracts. It says the damages must be reasonably certain and there must be some way to quantify the damages. In this case, there's not because the damages expert not only had no way to connect the farms that actually flooded based on the other expert, but he also didn't factor in whether they ever even lost one dollar because of any of this additional flooding. If the exact same rains would have fallen and this bridge would have not been there, we have no way to know whether that caused the farmers to lose any money or not. There would have absolutely still been flooding had this bridge not been here. Everyone testified to that. Everyone testified that there was flooding before the bridge. There was flooding after the bridge. I'm trying to break in on your time, but this bridge definitely didn't let as much water go through as the old bridge, right? Correct. Everybody said that to you doing everybody's. Everybody said that too. Right. They did say that. They did say there is more flooding, but there was still some flooding beforehand. Did that more flooding cause any loss of rental value of their land? We don't know that because we don't have the crop yields. Their own expert testified that the way you determine that is water the crop yields, and so we don't know that. Since we don't know that, we can't calculate damages to any reasonable certainty. We have no way to quantify it at all. Another thing that Ms. Greathouse mentioned was that she talked about the jury instruction the court gave. One was based on fair market value. The other was based on the expense of necessary repairs. There was one shred of evidence, just one, for one farmer about repairs that he made. It was Michael Watkins stated that he spent $20,000 on repairs. They awarded him that too. They did. The jury did award him that. We would ask the court that if that was the only evidence of anything supporting a verdict, that the verdict would at least be reduced to that $20,000. In addition to that, though, we believe that that $20,000 was not supported by the evidence whatsoever because he very well could have had to use that same $20,000 to improve his land, if things were surveying work, from any flood. There was no evidence that the additional flooding, on top of what would have been ordinarily expected, caused him to incur those additional damages. To wrap up the argument, yes, there was flooding. Yes, there was more flooding, but there's no way to determine whether that additional flooding caused these farmers to lose even one crop over one particular year. Since there's no way to calculate to a reasonable certainty what the damages were, this court should overturn the denial of Article 50 motion for judgment as a matter of law and uphold the finding that the plaintiffs were not entitled to injunctive relief. Thank you. Thank you both for your arguments. Counsel, if you have something, you should put it in a 28-J letter. You hear me? Yes. Please do it in an after-argument letter, as we've exhausted our times. Thank you both for the argument. Cases number 23-1939 and 23-2110, both cases are submitted for decision by the court. Ms. Henderson.